**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

BRET D. LANDRITH,

*Plaintiff,*

v.

Case No. 12-2352-EFM

BANK OF NEW YORK MELLON; CATHERINE A. REIN; BANK OF AMERICA CORPORATION; COUNTRYWIDE HOMELOAN, INC.; CWALT, INC.; ALTERNATIVE LOAN TRUST 2007-OA7; BAC HOME LOANS SERVICING, LP; COUNTRYWIDE FINANCIAL; COUNTRYWIDE HOME LOANS; KPMG LLP; STEPHEN E. SUMMERS; REALTY EXECUTIVES OF KANSAS CITY; SOUTH & ASSOCIATES, PC; and BRYAN CAVE, LLP,

*Defendants.*

**ORDER IMPOSING FILING RESTRICTIONS**

In light of the exhaustive filings from Plaintiff Bret D. Landrith in the above-captioned case, as well as his history of vexatious and harassing litigation, the Court deems it necessary to impose, *sua sponte*, restrictions on any future filings from Landrith. It is well-established that "the right of access to the courts is neither absolute nor unconditional."[1] Pro se litigants, who are

[1] *Sieverding v. Colorado Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006) (quoting *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989)).

not deterred from frivolous filings by the threat of mounting attorney's fees, can compromise the interests of justice when the Court "is forced to devote its limited resources to the processing of repetitious and frivolous requests."[2] Therefore, the federal courts have inherent power to impose necessary and appropriate restrictions upon a party in aid of jurisdiction.[3] An injunction may be appropriate where the Court sets forth the litigant's abusive and lengthy history, gives the litigant notice and opportunity to be heard, and makes clear the requirements the plaintiff must meet to obtain permission to file an action.[4] When considering the appropriateness of an injunction, the Court must consider the following five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.[5]

The central question for the Court is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."[6] The Court has reviewed the enumerated factors and answered the ultimate question in the affirmative.

In the last two years, Landrith has initiated three frivolous pro se lawsuits in the United States District Court for the District of Kansas. All were dismissed without the court reaching the merits of Landrith's claims.

---

[2] *In re Sindam*, 498 U.S. 177, 179–80 (1991).

[3] *Werner v. State of Utah*, 32 F.2d 1446, 1447 (10th Cir. 1994).

[4] *Tripati*, 878 F.2d at 353–54.

[5] *United States v. Kettler*, 934 F.2d 326 (table), 1991 WL 94457, at *6 (D. Kan. June 3, 1991) (citing *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

[6] *Safir*, 792 F.2d at 24.

First, In *Landrith v. Gariglietti et al.*,[7] Landrith sued the Chief Judge of Kansas's Eleventh Judicial District and the Clerk of the Appellate Courts, alleging that these court officials violated his due process and equal protection rights during the course of Landrith's own divorce and custody dispute. Chief Judge Vratil dismissed Landrith's complaint as frivolous under 28 U.S.C. § 1915(e)(2), which requires dismissal of frivolous suits brought *in forma pauperis*.[8] Landrith moved for reconsideration, and when his motion was denied, appealed to the Tenth Circuit, which affirmed the dismissal of the suit saying, "[W]e have *no question* the district court correctly dismissed Mr. Landrith's case under § 1915(e)(2)."[9] During the course of that case, Landrith filed six motions that the court either denied or found deficient.

While he was appealing the judgment in *Landrith v. Gariglietti et al.*, Landrith filed a second pro se suit in this district, *Landrith v. Kansas Attorney General, Derek Schmidt, et al.*,[10] which named the Kansas Attorney General and eighteen other government officials as defendants. Landrith filed a sixty-seven-page, eleven-count complaint alleging that the defendants deprived Landrith of "his right to earn a living and his statutory right to Food Stamps as part of an ongoing conspiracy to obstruct justice."[11] The claims in that case were virtually identical to claims Landrith had made in a case he brought before the District Court of Shawnee County, Kansas.[12] Judge Murguia dismissed all of the claims on procedural grounds.[13] Landrith

---

7 Case No. 11-2465-KHV-GLR. The case was filed on 08/17/11, closed on 01/19/12, and affirmed by the Tenth Circuit on 01/02/13.

8 *Landrith v. Gariglietti et al.*, 2012 WL 171339 (D. Kan. Jan. 19, 2012).

9 *Landrith v. Gariglietti*, 2012 WL 6062668, at *1 (10th Cir. Dec. 7, 2012) (emphasis added).

10 Case No. 12-2161-CM-GLR.

11 *Id.* (Complaint (Doc. 1), at p.7, ¶ 6).

12 *See Landrith v. Kan. Attorney Gen.*, 2012 WL 5398004, at *1 (D. Kan. Nov. 2, 2012).

filed a motion for reconsideration, and in an order denying the motion, Judge Murguia granted the defendants' motion to impose filing restrictions on Landrith.[14] In that order, Judge Murguia recited the defendants' list of frivolous pro se cases that Landrith had initiated,[15] and made the following findings:

> Plaintiff's pattern is clear: on multiple occasions, he has brought the same claims against the same parties and alleged serious misconduct without factual support. His conduct has resulted in serious repercussions—loss of his livelihood, his law license. Yet, he persists. As plaintiff's "conspiracy" broadens, there is no telling which additional government officials, members of the judiciary, or other defendants will face plaintiff's baseless allegations.[16]

Judge Murguia issued an injunction barring Landrith from filing any claim related to the subject matter of case number 12-2161 or any claim against the parties named in that suit without first obtaining leave from the court or being represented by counsel.[17] Landrith is now appealing the rulings from the district court.

In this case, Landrith filed suit against fourteen defendants—including the law firms that represented other defendants—alleging that Defendants engaged in fraudulent real estate practices that rose to the level of RICO violations. Landrith had previously attempted to pursue versions of these claims in both the Kansas and New York state courts. The Johnson County, Kansas, District Court stated, in its order granting a motion to strike Landrith's pleadings, "Bret

---

13 *See id.* at *3–8.

14 *See Landrith v. Kan. Attorney Gen.*, 2012 WL 5995342 (D. Kan. Nov. 30, 2012).

15 *Id.* at *5.

16 *Id.* at *6.

17 Although Landrith had an opportunity to respond to the defendants' motion for filing restrictions, Judge Murguia granted Landrith another opportunity to make objections to the court's injunction because Landrith had not addressed the merits of defendants' motion in his response. *Id.* at *7. Landrith did file objections, but they did not persuade the court to retract its earlier injunction. *See Landrith v. Kan. Attorney Gen.*, 2012 WL 6100214 (D. Kan. Dec. 7, 2012).

D. Landrith inserted himself into the litigation and made unsubstantiated allegations against the Plaintiff and Plaintiff's counsel and has failed to follow applicable law and procedures."[18] The New York court also noted Landrith's failure to properly serve the opposing parties and the "bare assertions" of his complaint, and dismissed the case for *forum non conveniens*.[19]

Landrith filed the above-captioned suit after the state courts dismissed Landrith's claims on procedural grounds. The deficiencies in Landrith's complaint are too numerous to count. For example, Landrith appears to bring his claim under 18 U.S.C. § 1962 when the statute that grants a civil cause of action is § 1964. Additionally, as the Court explained in its memorandum and order granting Defendants' motions to dismiss, Landrith has no standing under either Article III of the Constitution or the RICO statute.[20] Most concerning to the Court is that the factual events underlying Landrith's claim—his purchase of a worthless quitclaim deed—could not possibly be construed to support the allegations contained in Landrith's complaint. Furthermore, although Landrith was originally represented by counsel, the Court granted his attorney's motion to withdraw after the attorney expressed concern that the Court may find the suit to be frivolous.[21] In spite of this premonitory advice from his attorney, Landrith chose to proceed pro se.

In addition to the cases initiated in this district and the subsequent appeals to the Tenth Circuit, Landrith has filed pro se mandamus actions in the Tenth Circuit[22] and numerous state

---

[18] Order of the District Court of Johnson County, Kansas, Doc. 8-1, at 37.

[19] Order of the Supreme Court of the State of New York, Doc. 15-5, at 4–9.

[20] *See* 18 U.S.C. § 1964(c) (stating that a civil suit may be initiated by "[a]ny person injured in his business or property by reason of a violation of section 1962").

[21] *See* Motion to Withdraw as Attorney, Doc. 44, at 1–3.

[22] *In re Landrith*, No. 11-3388 (10th Cir. Feb. 21, 2012), *motion to reopen denied*, *In re Landrith*, No. 11-3388 (10th Cir. Apr. 4, 2012).

court cases.[23] Furthermore, the Kansas Supreme Court's reasons for disbarring Landrith are worthy of note. As Judge Murguia previously summarized:

> In his disbarment case, the Kansas Supreme Court noted that plaintiff "wasted valuable resources because of [his] absolute incompetence and interference with the administration of justice . . . . [T]he legal profession has been damaged by [his] false accusations against members of the judiciary; attorneys; court personnel; and other state, county, and municipal employees." Plaintiff's history is particularly relevant in addressing plaintiff's claims in the instant case, as the Kansas Supreme Court has pointed out his "pattern of misconduct, multiple violations; [and] lack of acknowledgement of wrongdoing or remorse." This court agrees with the Kansas Supreme Court that plaintiff's "language is occasionally incoherent, and, more than occasionally, inflammatory" and that plaintiff "consistently fails to cite a factual basis for his allegations or to develop sensible legal arguments."

This Court echoes the sentiments of Judge Murguia and the Kansas Supreme Court, and finds that Landrith's pleadings and motions in the above-captioned case against New York Bank of Mellon et al. to be unacceptable for several reasons. First, Landrith has wasted the Court's limited resources and, when contacting chambers, treated the Court's staff in an abusive manner. Second, Landrith has damaged the legal profession by accusing members of the bar of engaging in conspiratorial acts in violation of RICO without alleging the existence of any admissible supporting evidence, and by disparaging the Kansas and New York state courts. Third, Landrith's pleadings and motions were often incoherent, lacked support in both fact and law, and used antagonistic rhetoric. Fourth, Landrith is either unable or unwilling to recognize the impropriety of his litigious actions. The behavior he exhibited before this Court is identical to that for which he was disbarred.[24] He was again admonished for such behavior when Judge

[23] *See Landrith v. Kan. Attorney Gen.*, 2012 WL 5995342, at *5 (D. Kan. Nov. 30, 2012).

[24] The Supreme Court of Kansas, in its opinion disbarring Landrith, noted that he exhibited a "lack of acknowledgment of wrongdoing or remorse." *In re Landrith*, 124 P.3d 467, 485 (Kan. 2005). Indeed, in the wake of the court's opinion, Landrith appealed his disbarment to the United States Supreme Court, which denied certiorari. *See Landrith v. Kan. Discipline Adm'r*, 549 U.S. 838 (2006). Landrith then filed a § 1983 claim in the

Murguia imposed filing restrictions for pursuing "vexatious, harassing, and duplicative" litigation that has "no objective good faith basis of prevailing."[25] Landrith nevertheless chose to pursue this frivolous and defamatory lawsuit. In sum, the Court has no doubt that Landrith "has a history of vexatious litigation [and] is likely to continue to abuse the judicial process and harass other parties."[26]

As a result of Landrith's ignominious history of filing frivolous and extortionate lawsuits in this district and his apparent inability to curb his habit of abusing the judicial system, the Court believes it is appropriate to impose district-wide filing restrictions on Landrith. The Court finds it necessary to enjoin Landrith from any further pro se filings in case number 12-2352-EFM and from initiating any actions in this district without first obtaining either leave from the court, if proceeding pro se, or the representation of an attorney in good standing who is licensed to practice in the State of Kansas and admitted to practice in this Court.

Because the Court is imposing these restrictions sua sponte, the Court will permit Landrith to file objections to the Court's provisional restrictions. The Court emphasizes that Landrith is not required to file any objections, but because what's past is prologue, the Court will assume such objections are forthcoming and imposes the following conditions: (1) any written objections must specifically address the proposed restrictions; (2) the objections may not include any arguments previously made in this case or further arguments regarding the alleged RICO violations; (3) any objections are limited to no more than five double-spaced pages using twelve-

---

federal district court, alleging that the state's disciplinary charges were initiated in bad faith. *See Landrith v. Hazlett*, 170 Fed. App'x 29, 31 (10th Cir. 2006). The district court dismissed the case, and the Tenth Circuit affirmed. *Id.*

[25] *Landrith v. Kan. Attorney Gen.*, No. 12-2161-CM, slip op. at 8 (D. Kan. Nov. 30, 2012) (Doc. 110).

[26] *Safir*, 792 F.2d at 24.

point font and containing one-inch margins; (4) any objections must be filed no later than fourteen calendar days from the entry of this order. If Landrith fails to comply with any of these conditions, or chooses not to file any objections, the provisional filing restrictions described below will take effect fourteen calendar days from the date of entry of this order.

**IT IS ACCORDINGLY ORDERED** this 20th day of March, 2013, that Plaintiff Bret D. Landrith is hereby advised that he may file objections to this Order pursuant to the following conditions: (1) any written objections must specifically address the proposed restrictions; (2) the objections may not include any arguments previously made in this case or further arguments regarding Defendants' alleged RICO violations; (3) any objections are limited to no more than five double-spaced pages using twelve-point font and containing one-inch margins; (4) any objections must be filed no later than fourteen calendar days from the entry of this Order.

**IT IS FURTHER ORDERED** that if Landrith fails to comply with the conditions set out above for the filing of objections, then the following injunction shall become effective fourteen calendar days from the date of entry:

1. Unless he first obtains leave, Bret D. Landrith is **ENJOINED** from making any pro se filings in the United States District Court for the District of Kansas in or related to the subject matter of District of Kansas case number 12-2352-EFM.

2. Landrith is further **ENJOINED** from commencing any pro se litigation in the United States District Court for the District of Kansas unless he first obtains leave to proceed.

3. If Landrith, proceeding pro se, desires to file a new lawsuit in the District of Kansas, he shall file a petition with the Clerk requesting leave to file a complaint or other pleading that includes:

A. A copy of this Order and any subsequent Order;

B. A copy of the proposed complaint or pleading;

C. A list of all other lawsuits or other matters currently pending or previously filed with this Court or any other court that involve the same or similar claims or parties, including the name, number, and status or disposition of each listed case.

D. A notarized affidavit certifying that:

(1) The claims have not been previously asserted and/or do not involve issues previously litigated and resolved; and

(2) The claims are not frivolous, malicious, or made in bad faith.

4. Landrith shall mail or otherwise deliver his submissions to the Clerk of the Court, who shall forward them to a judge of this Court for determination as to whether the complaint or pleading is lacking in merit, duplicative, frivolous, or malicious. The Court will either allow the filing or issue an order of denial. Failure to follow these procedures will result in the summary rejection of any future case Landrith attempts to file in this Court.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE